Good morning. May it please the courts, counsel. My name is Rod Moody. I represent Club Level and I represent Ryan Fila in this matter. I'd like to reserve three minutes if I could. Ryan Fila in 2010 and throughout 2011 started the application process with the Washington State Liquor Control Board to obtain what's called a nightclub license. That is the title of the license under RCW 6624600. He obtained that license. He was the holder of that license. He was the owner of Club Level. It is that license that was under attack by the City of Wenatchee Police Department. It is what distinguishes this case from FDIC v. Henderson, the Enquist decision. The wedges, well, wedges, ledges is arguably applicable, but the point here is that it is that license that distinguishes this case from so many of the cases that have been cited here. For example, this court stated on page 10 of its decision, plaintiffs must first show that Fila is no longer able to pursue employment in the bar or nightclub industry. That is not the case. That is not an accurate statement of the law. That law was modified in the wedges, ledges decision to state any comparable. Those are the modifying language that was added. The comparable position for Mr. Fila is not to work as a bartender or as a bouncer in a bar or even a bar manager. The comparable position for Mr. Fila is someone who holds a license under 6624600. And if you attack that license and remove that license, you remove Mr. Fila's ability to go out and work in this industry. It is what makes this case comparable to Schware versus the bar of examiners. Just because you were a member of the Communist Party years before does not prohibit you from sitting down and taking the New Mexico bar exam. And that's what the Supreme Court said that was wrong in that particular case. It was the license that was the issue. Without the license, you can't practice law. Without 6624600, you can't operate a nightclub. No one in Wenatchee cared whether Ryan Fila went and became a bar manager at some other location. What they cared about was that license. The factual evidence to show the arbitrary and capricious actions are, I would respectfully submit, disregarded by the district court. But they are voluminous and substantial in this case. They show the police officers the minor allegations. They sat across the street and watched this particular location. They followed customers as they drove away. They followed staff as they drove away. They followed Mr. Fila as he drove away. Pulled him over without citation. The more serious violations include coming in on a disproportionate number of times and doing walk-throughs. Literally inserting their noses into the drinks of patrons to smell for alcohol. Then there's the location of strategic interest. For example, that is a designation that the State Liquor Control Board attaches to certain organized bars that show a willing disregard, if you will, for the laws and the ways in which a bar should be operated properly. It is important for this court to note that Mr. Fila, throughout all the time he operated Club Level, had not one single citation or administrative violation notice or ADN issued against him that was sustained. Until an ADN for inadequate lighting was sustained once Club Level was basically forced out of business. During 2010, 11, and 12, there were no sustained ADNs. When Lieutenant Starkey was deposed from the Liquor Control Board and asked, does the actions of Club Level comply with the policy statements created by the Liquor Control Board regarding an LSI, his answer was no, they do not. When he was asked why have no ADNs been issued against Club Level, his answer was because our officers have found no violations. The point is, Mr. Fila, and the court will remember, Mr. Fila proactively went to Chief Robbins, went to Captain Dresker, went to Sergeant Hewson early on in 2011, and set up meetings to try and address how can I be a good neighbor in the city of Wenatchee and operate this bar. He was operating that bar in an appropriate and lawful manner. Counsel, could I ask you about your analogy of the Schwary case? Is it clear that your client would be totally barred from ever getting a license? Couldn't he apply for a license? Is he barred from applying for a license in the same way that Schwary was allowed to apply for the bar exam? Were Mr. Fila to lose the license under 66-24-600, he could certainly reapply. As he did in Wenatchee when he felt the pressure at the one location was too strong and he moved the location, however, he did have to apply to move the license. He couldn't, even within the city of Wenatchee, he couldn't just pick up from one physical plant and move to another physical plant and relocate. He had to, it wasn't the same application process as applying for the license initially, but there was approval process that was required of Liquor Control Board just to move. So for example, were Mr. Fila to say, okay, I can't operate in Wenatchee, I'm going to move to Yakima or the Tri-Cities. He would have to go through that same application process to move that license. But does that somehow put him in the role of not being able to operate a nightclub simply because he has to get a different license? Well, let's look at Schwary. Let's look at the Washington State Bar Association. If I lose my license to practice law, I can reapply at some point in time in the future, presumably. The issue there was that there was an absolute disqualifier as opposed to here. The hypothetical says, could he go to another place and get another license? Is he prohibited in some way really from practicing his profession, which as you say is operating a nightclub, not being a bartender? In theory, yes. He certainly could reapply and obtain that license. I mean, I can't deny that. Is it a bar? Well, I mean, it is a bar in the sense that you can't operate a nightclub in Washington State without that license. You can go be a, you know, you can get a food handler's permit and some other permits, I'm sure, but you can go be a bartender at Joe's and One Street and Igloo the next, and you don't have to go to the Liquor Control Board and apply to move or go to work at a different alcohol location. But you certainly do to move that license. Returning back to the LSI, this is an important Did his club ever have to close? Yes. His club has been forced to close. It was closed for financial reasons. The pressure Okay, but yeah. Maybe I should have probably added a little qualifier, is that in the record during the time of the litigation, is there something you can point me to that would say he was forced to close because of the Wenatchee Police Department's conduct? No, no, no. We have heard multiple times. There was nothing we ever did that forced him to lose his license. I'm just asking you to point me in what you think in the record. No, he did not lose his license. He voluntarily closed that business because of the economic pressure that was created. It is, there's a distinction between what the court is asking me and the reasons why he closed the business. I understand. And that will be, you know, certainly we acknowledge that. But the reality is the same. Club level is closed. That source of income stream has been lost to him, essentially. Now, the point I wanted to make about the LSI, though, and this is important. The LSI, as Lieutenant Starkey testified, Lieutenant Starkey of the State Liquor Control Board, is driven by reports from law enforcement. So I make this point of during August of 2010 to August 2012, 26 reports are filed. 24 are determined to be from law enforcement, the Wenatchee Police Department, to liquor control are forwarded. 24 are unfounded. Two are receiving written warning. One reasonable inference is, well, you've got a bar that just simply has a great deal of problems that are being created for the local police department. And so they need to report these. Well, there's another reasonable inference, which I respectfully submit the court is required to grant on a motion for summary judgment, and which was not. And that is that combined with the statement in the February 2011 email from Captain Dresker, the second highest level management official on the Wenatchee Police Department, we have to be more proactive up to and including pressing liquor control to shut this business down. That is the email sent not once, but two separate occasions, combined with Lieutenant That's a statement of concern, but it never got followed up. Certainly it got followed up. And it got followed up because, as Lieutenant Starkey says, what drives an LSI designation are reports from law enforcement. And you have 26 reports for the rest of the entire city. For every other bar combined, you have a grand total of four reports for the same period of time. The reasonable inference that can be drawn from that I would respectfully submit to you, Your Honor, is that this is a police department that is communicating with liquor control officers. You've got the email from Officer Drolet to Officer Murphy of the Liquor Control Board. I figure, and I quote, a few expensive tickets will slow things down. You have communications between these two organizations. Wenatchee Police Department knows that what drives the LSI are the reports from law enforcement. That's why you've got 24 unfounded reports in a two-year time frame, when for virtually every bar in the city, you've got four. It is because the police department knows we can't shut this bar down on our own. We need to use the administrative process. And that is why you have all the reports being made. You have selective enforcement, for example. You've got Sergeant Houston coming in when three female minors are stopped at the door, segregated away. He comes and does not issue a citation, just simply turns them loose. Until when? A week later, when I issue the tort notification to the city of Wenatchee under RCW 4.94, or 96, excuse me, saying I'm going to be suing you. That's when the citations are issued. What's the point of that? Today's social media, all those kids, like wildfire through that town, go to club level. Try and get in. The police aren't going to do anything. What does that do? That drives minors there. That drives potential citations. Because the Wenatchee Police Department knows the only way to close this business down is to pull that license. And that's what separates this case from wedges ledges and from Henderson and from Enquist. The district court hung on the Enquist decision so particularly, and citing because Enquist was a specialized scientist and there were three positions in the country or whatever the number was, some very small number. And the court was pointing out, saying, well, you can't have the specific job that you want. That's what the case law says. But the distinguishing feature between Enquist and Ryan Fila is that license. The scientist in Enquist did not need to have a license to operate a nightclub. Mr. Fila does. And that's why Enquist respectfully does not apply. It is just simply dissimilar to the current circumstances. So when we look at all of the substantial facts, and that substantial facts have been created and put into this record, and when we look at the Bonini case, and you look at the facts of Bonini that took place in that particular case, they are directly comparable to the facts of the present circumstance and the law enforcement officer's actions. When you combine the testimony of Lieutenant Starkey and you combine it with the email from Captain Dresker and you compare Captain Dresker's own testimony regarding a spot called the Keene spot, a bar when he was simply a patrol officer, not in administration, he admitted during my deposition of him that he acknowledged that by going and being there more present, creating a greater law enforcement presence, it drives down the business, and he achieved the result that he wanted. Did you want to reserve your remaining time? I did. Did I say two minutes? Do I still have two minutes? You do. You have two minutes and 12 seconds, but I thought I would alert you. I'll reserve two minutes. Good morning, Your Honor. May it please the Court, Patrick McMahon representing the City of Wenatchee and the individual Wenatchee police officers who are named defendants, counsel. What's glaringly missing from counsel's argument here is the constitutional standard that has to be applied to this action in this case. The due process clause of the 14th Amendment, as the Court is well aware, states unequivocally that there is a property interest to pursue a profession that an individual chooses to pursue. And I believe Your Honor hit the nail right on the head with the question asked to counsel, did Mr. Fila or did Club Lovell, were they precluded? Was their 14th Amendment due process right violated by not being allowed to maintain their liquor license or to apply for a liquor license? What's glaringly absent in the record is that there is absolutely no evidence whatsoever that Club Lovell declined its license. The Washington State Liquor Control Board did not take its license away, nor is there any evidence in the record that Mr. Fila, as the Court addressed the question, could not apply if he chooses to get back into running a bar or a nightclub, apply for another liquor license, even though he let his license lapse. The fact that he did let his license lapse is based on business reasons, financial reasons, but there's no evidence tying that any police involvement precluded him from getting his license. Well, but I think his argument was that your police action led to the business decision, that you drove me out not by depriving me of a license but by depriving me of my business. Well, it's speculation whether it did that, Your Honor. First of all, he could have run the business. He just chose not to run the business. And I think what's a key fact that I think shows, despite the allegations of counsel, the city of Wenatchee mayor, the Honorable Frank Kuntz, actually wrote a letter approving and recommending the physical location move from club level in one part of the city of Wenatchee when they moved to another location. Counsel went through the procedure that one has to go through to change their license to a different physical location. The city actually approved that move, had no objection to him running a business in the city of Wenatchee. The only objection was law enforcement officers are mandated by statute under the state liquor control statutes to enforce the liquor control statutes. And so because there is a glaring absence of any evidence that he was precluded from pursuing his business, the first prong in the Ninth Circuit law is absent. He has to demonstrate that there was an inability to pursue his profession. I believe, Judge O'Scanlan, in your question, the case that was relied on, the Schwer case, and I believe, Judge McCowan, you asked the same question. That was a situation where a young person, based on his past, had been involved in different groups and had some sort of a criminal history, and although he had an exemplary record through law school and at the time he was going to sit to take the bar exam, he was precluded based on those affiliations. That is a classic example back in the 1950s of the case where we've evolved to today, that he was, that individual was precluded from pursuing his profession. And that absolutely is not the case here. And I would also, although it wasn't touchstone on the other issues, I think Judge Shea from the Eastern District did point out and cite in the case in his order that, although counsel argues that Mr. Fila was not going to pursue any profession in the liquor business, the case is clear under the Inquis case, which is a 2009, 2007 Ninth Circuit case. The right to pursue an occupation is highly generalized, encompassing the right to pursue an entire profession, not the right to pursue a particular job. And there's just absolutely no evidence in this record that Mr. Fila was unable to pursue his occupation in running a nightclub business. The fact that there was a larger number of walkthroughs at club level is an argument that doesn't go to the prongs that have to be analyzed by the court. But what is in evidence in the record is that there was a larger volume of criminal activity at this particular location and that there were concerns of police activity needed to be involved to preclude that activity from taking place. But that didn't violate any constitutional right. And any state claims violating that right were denied by the court under supplemental jurisdiction, dismissed without prejudice, were refiled, and have been argued to the Division III Court of Appeals pending decision on those issues. His argument, as I heard it, would be more that, you know, it's a death by a thousand cuts in terms of the police activity and that there may be a factual issue as to whether, you know, this hounding, hounding, hounding really basically in the end does drive you out of business. So even though for financial reasons it was a functional equivalent of having your license lifted because the Wenatchee Police action drove it to that position, do you think there's a factual issue on this? I don't believe it is a factual issue at all, Your Honor. In fact, I think the district court was squarely on point when it said that all that plaintiff has demonstrated by the evidence in the record was that the police were enforcing the liquor laws as they're enacted under the state statute. And other than that, that doesn't show that there's been any constitutional deprivation, that he was unable, that he lost his license or was unable to pursue his right to perform the business, nor under the second prong, which I don't even think we get to, was there any evidence that there was a substantial relationship that what the police officers were doing violated the public safety and health and welfare of the liquor statutes. And that's exactly what the preamble to RCW 66 says, is that that's why law enforcement is given the authority or the charge to enforce those laws, is to protect the public health and safety in enforcing liquor laws and liquor establishments. As far as the other claims, I don't know if they were argued, but I believe that the district court was accurate in that there is no Fourth Amendment protection in a liquor establishment for a right of privacy. Although there was no constitutional violation, qualified immunity would apply if the court does think there is a constitutional violation to the individual officers. And as far as the discovery issue, it wasn't addressed, but that certainly is a discretionary call by Judge Shea, and he stated in the record and the evidence we presented in responding, shows that he did not abuse his discretion in the privilege logs that were provided to plaintiff's counsel, and that should be affirmed as well. So in total, Your Honor, I would believe that the district court order was correct and the correct application of the due process clause was applied in this case. Thank you. Thank you. You have some rebuttal time. Counsel raises the issue that the constitutional standard is not met. That question is answered in the following way. When you utilize lawful actions to achieve an unlawful result, you are engaging in unlawful conduct, which is both beyond arbitrary and capricious. And that is what has taken place here. No one is arguing that it is unlawful for a Wenatchee police officer to walk into a bar and walk around and do a, as they quote, walk-through. That is not an unlawful action. But when you use, as the court has stated, death by a thousand cuts, when you walk in 160 times as opposed to 110 for every other bar in the city, when you park across the street, when you issue parking citations, when you work with and conspire with the state liquor control board to designate this as an LSI before there's a single violation, which is directly contrary to the policy statement of the liquor control board, as stated out there, or you can look it up on the web. It is those lawful actions with the intended unlawful result, which is the closure of this business through the administrative process, which is exactly why Sergeant Stensetter issues a citation for, Sergeant Stensetter of the liquor control board, not of the Wenatchee Police Department, issues a citation for inadequate lighting and then immediately calls the next day down to the licensing component of the liquor control board because he knows that that temporary license that was issued that allowed Thela and Club Lovell to move from one location to the other would be immediately delayed without any opportunity for a hearing on this issue if that inadequate lighting citation is sustained. And it had to be heard by the head of that department. There was a discussion, and his deposition was taken as well. It is these conspiratorial actions that are utilizing lawful actions to achieve an unlawful result. That is why the constitutional standard is met. As far as the Fourth Amendment, look at the Dodge City case. As far as the right of first association, Thela and Silvestre are roommates. That meets the, I forget the name of the case, but it's in my brief. But that is the citation. That intimate relation, not sexual, but that intimate relation would be sustained. I'm out of time. Thank you very much. Thank you. Very concise rebuttal. Thank you. I appreciate it. The case of Club Lovell v. City of Wenatchee is submitted. Thank you both for your argument this morning, and we're adjourned.
judges: O'scannlain, Ebel, McKeown